IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

Case No.:

DENISE HARPER,

    Plaintiff,

vs.

CONSULATE MANAGEMENT COMPANY, LLC; CMC II, LLC; and LAVIE CARE CENTERS, LLC,

    Defendant.

_____/

**PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Virginia DeSiervo (hereinafter "Plaintiff") sues the above Defendants, Consulate Management Company, LLC; CMC II, LLC; and Lavie Care Centers, LLC (hereinafter collectively referred to as "Defendants") for disability discrimination under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq* (hereinafter "ADA"); retaliation under the ADA; and worker's compensation retaliation under Florida Statute § 440.205, alleging as follows:

**PARTIES**

1. Defendants own and operate senior health care facilities both in Florida and throughout the United States. Currently, they run 86 facilities in Florida, and 141 nationwide.

2. Plaintiff worked at one of these facilities, which is owned by Defendants, named "Bay Breeze Health and Rehabilitation Center" (hereinafter "Bay Breeze"). Bay Breeze is located at 1026 Albee Farm Road, Venice, Florida 34285.

3. Defendant Lavie Care Centers, LLC is a Delaware limited liability corporation that maintains a principal place of business in Florida, located at 800 Concourse Parkway South,

Maitland, Florida 32751.

4. Defendant CMC II, LLC is a Florida limited liability corporation that maintains the same principal place of business as Defendant Lavie Care Centers, LLC, at 800 Concourse Parkway South, Maitland, Florida 32751. The sole member of Defendant CMC II, LLC is Lavie Care Centers, LLC.

5. Defendant Consulate Management Company, LLC is a Florida Limited Liability Corporation that also maintains the same principal place of business as both other Defendants, at 800 Concourse Parkway South, Maitland, Florida 32751. The sole member of this entity is CMC II, LLC.

6. Plaintiff was employed by Defendants from December 17, 2019 until July 9, 2020. Throughout her employment, she worked at Defendants' Bay Breeze location. At all times material hereto she has been a resident of Sarasota County, Florida.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12101, because this action involves a federal question under the Americans with Disabilities Act.

8. This Court has original and personal jurisdiction over this action because the Defendants are engaged in business within the State of Florida, and the action complained of occurred in Florida.

9. This Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367(a), as this claim is factually related to Plaintiff's federal claims and arises from the same case and controversy as Plaintiff's federal claims.

10. Venue is appropriate in the Tampa Division of the Middle District of Florida pursuant

to 28 U.S.C. § 1391(b)(2) and the Rule 1.02(c) of the Local Rules of the United States District Court, Middle District of Florida, because Defendants own and operate facilities in Sarasota County, and the unlawful conduct complained of occurred within the Tampa Division of this Court.

## GENERAL ALLEGATIONS

11. Plaintiff has satisfied all conditions precedent to filing this action. Specifically, Plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission, which subsequently issued a Notice of Right to Sue. This document is attached hereto as Exhibit "A."

12. Plaintiff was hired by Defendants on December 17, 2019, as a nurse in their Bay Breeze facility.

13. Plaintiff has been a registered nurse since 2004. Her job history includes working in long term care facilities, hospitals, psychiatric care facilities, and work in the corrections system. She has not had disciplinary proceedings against her license.

14. Throughout her employment with Defendants, Plaintiff's hourly rate of pay was, on average, $28.00 per hour. She was typically scheduled to work twenty-four (24) hours per week.

15. Plaintiff suffered two (2) workplace injuries with Defendants. The first occurred on February 24, 2020. On that day, Plaintiff was repositioning a patient who was sliding out of a chair. While lifting the patient, she felt pain in her head, neck and shoulders.

16. As a result of this injury, Plaintiff had a physical impairment that substantially limited her ability to lift, perform manual tasks, stand, and bend.

17. After this first workplace injury, a worker's compensation claim was filed, and she

began receiving treatment through physicians chosen by Defendants' worker's compensation carrier.

18. After this first workplace injury, her worker's compensation doctors placed Plaintiff on work restrictions.

19. After this first workplace injury, Plaintiff was able to perform the essential functions of her job with reasonable accommodations. Further, Defendants had a history and policy of accommodating employees who were injured on the job.

20. Despite being put on work restrictions, Defendants required Plaintiff to continue appearing for work each and every day, as scheduled, as part of their "100% Return to Work" policy.

21. Defendants had unrestricted access to Plaintiff's medical records stemming from her workplace injuries, and otherwise had knowledge of her work restrictions at all times.

22. After this first workplace injury, Defendants continually and consistently assigned duties to Plaintiff that were outside of or in violation of the work restrictions ordered by her worker's compensation doctors. Many times, if not every time, Plaintiff was assigned these duties because Defendants' Bay Breeze location was short staffed.

23. Plaintiff's second workplace injury occurred on May 19, 2020. On that day, Plaintiff was assigned one-on-one duty with a patient. This duty involved numerous tasks that were outside of or in violation of the work restrictions ordered by Plaintiff's worker's compensation doctors.

24. While assigned this duty, the patient Plaintiff was tasked with monitoring grabbed her arm, causing her injury. Specifically, Plaintiff was thereafter diagnosed with a torn rotator cuff, adhesive capsulitis, and a cervical injury.

25. As a result of these injuries, Plaintiff suffered immense pain. Accordingly, she was prescribed pain medication by her worker's compensation doctors and told that she was required to take it daily.

26. Despite Plaintiff's injuries, pain level, and mandated medications, Defendants continued to require her to work each and every day, without any change to the schedule she worked prior to her first injury.

27. After Plaintiff's second workplace injury, her worker's compensation doctors increased her work restrictions. Specifically, she was ordered not to use her right arm in any way whatsoever.

28. Despite this specific work restriction ordered by Plaintiff's worker's compensation doctor, Defendants continued to assign Plaintiff duties outside of and in violation of the restriction. Examples of such duties included, but are not limited to: (1) answer telephone calls and simultaneously write down messages, requiring the use of both arms; (2) take patients temperatures, requiring the use of both arms; (3) work one-on-one with patients, which involved numerous tasks requiring use of both arms; and (4) push the medication cart, requiring use of both arms.

29. Defendants also maintained a policy disallowing Plaintiff from taking her pain medication or icing her shoulder during her shift. She was only allowed to take her medication and ice her shoulder during breaks.

30. After her second workplace injury, Plaintiff received two (2) written disciplinary notices from Defendants. The first such notice was dated June 15, 2020. On that date, Plaintiff was reprimanded for "Sleeping or inattention on the job," and "Reporting for work or attempting to work while not fit for duty due to the influence of prescribed medication."

31. Sleepiness or drowsiness were side effects of the medication Plaintiff was required to take by her worker's compensation doctor. Defendants were well aware of this fact.

32. Further, Defendants required Plaintiff to work her full schedule after her workplace injuries, pursuant to their "100% Return to Work" policy.

33. Plaintiff made every effort to comply with Defendants' unreasonable demands, both before and after this first disciplinary notice. For example, Plaintiff would only take half of the prescribed medication while at work, to curb the side effects of sleepiness or drowsiness. Also, after she was disciplined, Plaintiff took the disciplinary notice to her doctor the very next day and asked what her options were to allow her to perform her assigned duties at work. Her doctors informed her that there were no other appropriate medications they could prescribe, and that she needed to continue taking the medication as directed.

34. After this first disciplinary notice, despite their knowledge that Plaintiff's ordered medication made her drowsy, Defendants assigned Plaintiff to the COVID-19 screening position. In this position, Plaintiff was forced to sit at a post and screen people who were entering the facility for potential COVID-19 exposure.

35. Plaintiff received the second disciplinary notice on July 1, 2020, for an infraction apparently dated June 29, 2020. This disciplinary notice states that she appeared for work unfit for duty "due to the influence of alcohol or drugs (illegal and/or prescribed)."

36. In response to the serious allegations made in this disciplinary notice, Plaintiff offered to take a drug test. Defendants refused to perform a drug test.

37. Plaintiff has never, in the entirety of her career as a nurse, been treated for or diagnosed with alcohol or drug abuse.

38. At the time of this second disciplinary notice, and throughout her medical treatment

through worker's compensation, Defendants were well aware of the medications which Plaintiff had been ordered to take by her worker's compensation doctors.

39. On July 9, 2020, Plaintiff was terminated for having two write-ups within fourteen (14) days.

40. Prior to Plaintiff's workplace injuries and resultant worker's compensation claim, she had never been disciplined by Defendants.

41. Defendants discriminated against Plaintiff on the basis of her disability by contemporaneously requiring her to return to work on a full schedule, regardless of her work restrictions, pain, and injury, while contemporaneously reprimanding, disciplining, and terminating her for following the very instructions given to her by her worker's compensation doctors when she returned to work, because those instructions negatively impacted her ability to perform her duties.

42. Defendants intentionally and maliciously retaliated against Plaintiff for filing a worker's compensation claim by reprimanding and terminating her approximately five (5) weeks after she suffered her first workplace injury and initiated her worker's compensation claim.

43. Defendants' malice toward Plaintiff is evidenced by the unfounded, unsubstantiated, and egregious allegation of alcohol and/or drug abuse contained in the second disciplinary notice, issued on July 1, 2020.

44. Defendants' failed to provide reasonable accommodations to Plaintiff after both her first and second workplace injuries, specifically by routinely and consistently assigning tasks to Plaintiff that were outside of or in violation of the work restrictions ordered by her worker's compensation doctors.

45. Plaintiff has hired the undersigned attorneys and agreed to pay them a fee.

## COUNT I: DISCRIMINATION UNDER THE
## AMERICANS WITH DISABILITIES ACT

46. Plaintiff incorporates and adopts all allegations contained within paragraphs 1-44 above as if fully stated within this count.

47. Plaintiff was an employee of Defendants pursuant to the ADA.

48. Defendant was Plaintiff's "employer" within the meaning of Title I of the ADA, in that they employ more than 15 employees.

49. Plaintiff suffered the adverse employment action of termination on July 9, 2020.

50. At the time of her termination, Plaintiff was disabled within the meaning of the ADA.

51. At the time of her termination, and throughout her employment, Plaintiff was able to perform the essential functions of her job with reasonable accommodations from her employer.

52. Plaintiff was subjected to unlawful discrimination on the basis of her disability, specifically by being terminated, reprimanded, and disciplined simply for following her worker's compensation doctor's instructions and orders.

53. As a result of Defendants' discrimination, Plaintiff has suffered damages, including compensatory damages, lost wages, lost benefits, future lost wages, emotional distress, prejudgment interest, attorney's fees, costs incurred in bringing this action, and other pecuniary damages.

54. Defendant's conduct was willful, intentional, and malicious, entitling Plaintiff to an award of punitive damages.

## COUNT II: FAILURE TO PROVIDE REASONABLE ACCOMMODATIONS UNDER THE ADA

55. Plaintiff incorporates and adopts all allegations contained within paragraphs 1-44 above as if fully stated within this count.

56. Plaintiff was an employee of Defendants pursuant to the ADA.

57. Defendant was Plaintiff's "employer" within the meaning of Title I of the ADA, in that they employ more than 15 employees.

58. Plaintiff became disabled while acting within the course and scope of her employment with Defendants.

59. Defendants were aware of Plaintiff's disability and had full access to her medical records through her employment.

60. Plaintiff was able and qualified to perform the essential functions of her job with reasonable accommodations.

61. Defendants failed to provide reasonable accommodations to Plaintiff by consistently and routinely assigning her tasks and duties that were in violation of the work restrictions ordered by her worker's compensation doctors.

62. As a result of Defendants' conduct, Plaintiff suffered damages, including compensatory damages, lost wages, lost benefits, future lost wages, emotional distress, prejudgment interest, attorney's fees, costs incurred in bringing this action, and other pecuniary damages.

## COUNT III: WORKER'S COMPENSATION RETALIATION UNDER FLA. STAT. § 440.205

63. Plaintiff incorporates and adopts all allegations contained within paragraphs 1-44 above as if fully stated within this count.

64. Plaintiff was employed by Defendants from December 17, 2019 to July 9, 2020.

65. Plaintiff engaged in statutorily protected activity by filing a worker's compensation claim for injuries she sustained while working.

66. Plaintiff was subjected to the adverse employment action of termination on July 9, 2020.

67. Plaintiff's termination was caused by the filing of her worker's compensation claim.

68. Plaintiff was subjected to intimidation and coercion for filing her worker's compensation claim, specifically by being reprimanded twice and ultimately terminated within just five (5) weeks after filing the claim.

69. Moreover, Defendants engaged in intimidation and coercion by alleging that Plaintiff was under the influence of alcohol or illegal drugs in their second disciplinary notice to Plaintiff, despite their knowledge that she was on prescribed medication for her workplace injuries.

70. As a result of Defendants' actions and conduct, Plaintiff has suffered damages, including but not limited to lost wages, back pay, future lost wages, emotional distress, loss of the ability for the enjoyment of life, prejudgment interest, attorney's fees, and costs incurred in bringing this action.

71. Defendant's actions, as detailed in this count, were intentional and malicious. Accordingly, Plaintiff is entitled to an award of punitive damages.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 28(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this Complaint and on all other issues to triable. DATED this 26th day of January, 2021.

Respectfully submitted:

*/s/ Nicholas J. Castellano, II*
Nicholas J. Castellano, II, Esq.
Florida Bar Number: 0118601
Email: nick@buckmanandbuckman.com

Y. Drake Buckman, II, Esq.
Florida Bar Number: 0137634
Email: attorney@buckmandbuckman.com

**BUCKMAN & BUCKMAN, P.A.**
2023 Constitution Boulevard
Sarasota, FL  34231
Telephone:	(941) 923-7700
Fax:	(941) 923-7736

*Attorneys for Plaintiff*